68 N.J. Super. 297 (1961)
172 A.2d 233
JOHN SCHERI, INDIVIDUALLY AND AS THE PARENT AND NATURAL GUARDIAN OF HIS INFANT DAUGHTER, MARIE T. SCHERI, PLAINTIFF-RESPONDENT,
v.
JOSEPH AND JUSTINE DePAOLO, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued June 19, 1961.
Decided June 30, 1961.
*298 Before Judges CONFORD, FREUND and KILKENNY.
Mr. William J. O'Hagan argued the cause for defendants-appellants (Messrs. Stout and O'Hagan, attorneys).
Mr. John C. Giordano, Jr. argued the cause for plaintiff-respondent (Messrs. Giordano and Giordano, attorneys).
The opinion of the court was delivered by CONFORD, S.J.A.D.
Defendants appeal from a judgment for plaintiff entered on a jury verdict. The theory of the action was negligence of the defendant landowners in failing to warn the minor plaintiff, a social guest (who has since attained majority and now appears in these proceedings in propria persona), of a dangerous condition on their property, resulting in her injury when she came upon the premises unforewarned thereof.
Plaintiff's proofs as to liability, adduced solely through her own testimony and that of her mother, would have permitted the jury to find the following facts. Plaintiff drove to the home of defendants in East Orange, her mother a passenger in the car, on December 24, 1958, arriving there about 8:00 P.M. The prearranged purpose of the trip was *299 to pick up the young son of defendants, a soldier on furlough, who was then "going with" plaintiff's sister, and to drive him to plaintiff's home in Oceanport to stay over Christmas. Plaintiff parked the car across the street from the DePaolo home, "just a ways up from the house," about "two feet, three feet." The front of defendants' home was dark, being only dimly lighted by street lights. A stone path two to three feet wide ran from a sidewalk in front of the house a distance of about 55 feet to the front entrance of the dwelling. There were grass lawns on both sides of the center path. Plaintiff testified that there was a thin wire strung along the borders of the sidewalk and the path, hanging about two feet above the ground. The wire was "right on the pathway," "it met with the sidewalk." On redirect examination, she said the wire ran "two inches" from the pathway. There was testimony by both defendants that there was no wire at all along the path, but only bordering the sidewalk on both sides of the path, strung about a foot or a foot and a half from the sidewalk, and fastened to iron posts placed in the lawn about a foot from the center pathway on either side. They had put this wire up some years before to keep young bicyclists off the lawn.
Plaintiff and her mother testified, in substance, that plaintiff sounded her horn on arrival; that Mrs. DePaolo came out to the porch and called to them to come into the house, but they said they would wait in the car as they were in a hurry. After a few minutes Mr. DePaolo came out and also invited them in, explaining that the son was getting dressed. They responded they would wait in the car a bit longer. Thereafter, as plaintiff testified:
"A. Well I got out of the car and I walked across the street on to the sidewalk, and as I walked up to the pathway that met with the sidewalk, my right leg came in contact with the wire that met on the sidewalk, the pathway, and I just toppled over."
On cross-examination plaintiff testified:
*300 "Q. Then you went across the street? A. Yes.
Q. And you were a little to the right of the path as you went to cross the street? A. Yes.
Q. And you went across the street and were going to take a shortcut across the lawn of the house? A. No.
Q. Did you walk on the path? A. Well, I fell right at the corner there.
Q. Did you walk on the path, the sidewalk, when you got over on that side of the street? A. Yes.
Q. Did you get on to the path leading up to the house? A. Yes."
Plaintiff's mother testified "she toppled where the walk and the path met."
The defendant Joseph DePaolo testified that when plaintiff came into the house after the accident she said, "I run and cut across, and I hit [sic]" (the witness spoke broken English). On cross-examination, he testified:
"Q. You testified on direct examination, as I recall, that she was running across the grass and that is when she fell. A. Yes."
The allusion was undoubtedly intended by counsel, and understood by the witness, to paraphrase defendant's direct testimony concerning the admission by plaintiff to him mentioned above.
Defendants urge that the trial court's refusal to charge one of their requested instructions, coupled with the effect of a germane portion of the charge as given, to which exception was taken, constituted prejudicial error. The charge requested was as follows:
"5. I charge you that as a matter of law you must find that whatever invitation was extended by the defendants to the plaintiff did not include an invitation to walk upon or cross defendants' lawn. Cortright v. Trustees of Rutgers, 120 N.J.L. 246 (E. & A. 1938)."
The here material portion of the charge as given is that which refers to plaintiff's crossing the lawn. With its preliminary remarks, it reads as follows:
*301 "Now, in this case you had this testimony as to invitation. A person who is invited into a house is invited for certain purposes, but the invitation extends to certain portions of the premises, depending upon the nature of the invitation, the purpose of the visit, so that I say if you invite someone into your home and you only expect or anticipate or foresee that that person is going to use one room and there is a known danger out in the rear yard of your house, then there is no duty on the land owner or the property owner to warn the guest of a danger which lurks in the place where the guest is not invited to enter. In other words, from the facts you have got to determine in this case what part of the premises the plaintiff was to use for the purpose for which she went there, either as a social guest, an invitee, or a licensee. So that if you determine that she was a social guest, that is the degree of care, as I have just read it to you, that applies to her.
Now, let's consider the care which a property owner owes to a trespasser. If from the facts in this case you find that at the time of this accident, whether it would be by invitation or by license or in her capacity as a social guest, if you determine that that did not give her the right to cross the lawn but that she was obliged from the testimony, as you have heard it, to use the sidewalk and the pathway leading in, and that by going, if she did go, across the lawn  and that is for you to say, where she went  but if she went across the lawn, then you may find and it is up to you to find whether or not she was a trespasser, and under the law a property owner, a land owner, does not owe the duty to a trespasser to use reasonable care. * * *" (Emphasis added)
Defendants contend that the general rule is that an invitee or licensee afforded by a landowner a walk providing ingress and egress to and from the property, who attempts a shortcut over a grass lawn and consequently falls over a wire strung to keep people off the lawn, may not recover from the owner by reason of his mere negligence in maintaining the wire, as the visitor thus departs "from the limits of the invitation" in going upon the lawn. This general proposition is supported by Cortright v. Trustees of Rutgers College, 120 N.J.L. 246 (E. & A. 1938), in relation to invitees. A fortiori would it apply to licensees, the category occupied by a social guest like plaintiff. See Berger v. Shapiro, 30 N.J. 89 (1959); Tomsky v. Kaczka, 17 N.J. Super. 211 (App. Div. 1952); Standiford v. Bernhardt, 13 N.J. Super. 357 (App. Div. 1951).
*302 True, there may be special circumstances from which a jury may infer an implied invitation from the landowner to cross an enclosed lawn, as in Williams v. Morristown Memorial Hosp., 59 N.J. Super. 384 (App. Div. 1960). But there are no such special circumstances in the present case, and no argument is made by plaintiff that she had an implied invitation here to go upon or over the lawn, in the sense of treading upon it. She admitted she could see the walk and path after crossing the street. Rather is it plaintiff's position that the testimony does not admit of any jury inference that she walked or attempted to walk upon the lawn, but only of the finding that she encountered the wire at or close to the point of intersection of the sidewalk and the pathway. The contention is that the wire was so close to the walk and path as to constitute in the poor light a danger to one substantially following the licensed course to the house while negotiating the intersection of sidewalk and path.
In appraising plaintiff's argument we are willing to go further than she does and assume the landowner's duty to foresee the hazard of a guest's innocent stepping across and over the angle of the intersection of walk and path without actually treading upon the lawn, and being hurt by unforewarned encounter with the inferably invisible low-slung wire hanging right up against the walk and path. Upon such a state of facts, defendants would be under the duty owing to a guest-licensee to disclose to her any concealed dangerous condition upon the premises known to them as landowners. Berger v. Shapiro, supra (30 N.J., at p. 98). A jury might, under the facts as to plaintiff's course of travel just hypothesized, reasonably find a breach by defendants of such an obligation in their failure to warn plaintiff of a wire situated so close to the intersection and strung as low as plaintiff's proofs indicated.
But if the jury found that plaintiff attempted to cross the lawn by walking or running upon it (as she might inferably have been doing in her impatience to get defendants' *303 son to hurry along), she would as a matter of law, under the Cortright case, cited above, have been exceeding her invitation as a social guest-licensee, and the defendants' duty of care to her would have been no greater than that owing to a trespasser, i.e., a duty merely to abstain from willful or wanton injury.
Since the jury could from the evidence have found either of the differing factual versions outlined above as to plaintiff's course of travel to be the truth (note particularly her alleged admission of "running across the grass"), it was incumbent upon the trial court to inform the jury of the stated legal consequences, in terms of effect upon defendants' duty and upon plaintiff's status, of any finding that she had attempted to run or walk upon the grass or lawn. Instead, the charge of the court permitted the jury, in effect, to accord her the status of and the protection due a licensee even if she had so attempted. The jury was permitted to determine for itself a matter of law, i.e., to decide whether or not under the evidence plaintiff had "the right to cross the lawn." This was error, as no view of the evidence in this case could properly have warranted concluding for the existence of a right in plaintiff to cross the lawn by walking or running over it. There was adequate objection to this feature of the charge, and to the refusal to make the correct charge on the point submitted by defendant.
For the reasons stated, there must be a reversal and new trial.
With one exception, we find no necessity of discussing the other points of appeal raised. None of them involve prejudicial error.
But one question which is raised by defendants may recur at the retrial, so we will briefly deal with it. On cross-examination plaintiff was asked whether she had injured the same leg as was hurt in the present incident as the result of another accident after the date here involved. She responded in the negative, at which point counsel for plaintiff objected to further questions along that line. The court *304 made its ruling dependent on whether defense counsel had affirmative proof to establish the subject matter of the inquiry; and when the latter said he had information along that line but no witnesses, he was precluded from going further. This is contended to have been prejudicial error in view of the materiality of the inquiry as to damages. A problem of this kind must necessarily rest largely in the discretion of the trial judge. Donovan v. Limouze, 108 N.J.L. 494, 495, 496 (E. & A. 1932); Palkoski v. Garcia, 32 N.J. Super. 343, 351 (App. Div. 1954), affirmed 19 N.J. 175 (1955). There is always the risk that the "information" being relied upon by the cross-examiner is inaccurate, and that pursuit of the inquiry will be prejudicial to the other side, since juries sometimes assume that "facts" referred to in questions are true even when denied by the witness under cross-examination. Much depends upon the court's impression of the bona fides of the examiner. See State v. Tune, 17 N.J. 100, 111 (1954). While we tend to think the court might have allowed defendants a bit more latitude in this instance, we cannot find an abuse of discretion under all the circumstances.
Reversed and remanded for a new trial.