WIRTH, by his Guardian ad Litem, Peter Weisenberger, and others, Appellants, v. EHLY, and others, Respondents.

Supreme Court

*No. 77–470. Argued December 4, 1979.*
*—Decided January 15, 1980.*
(Also reported in 287 N.W.2d 140.)

434

For the appellants there were briefs by *Bradley D. Armstrong* and *Axley, Brynelson, Herrick & Gehl* and oral argument by *Peter Weisenberger,* all of Madison.

For the respondents the cause was argued by *Charles R. Larsen,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

DAY, J.   The judgment dismissed with prejudice, for failure to state a claim, the complaint of the minor plaintiff and his parents alleging negligence causing personal injuries when the "trail bike" on which he was riding struck a cable stretched across a roadway used by the public on recreational land owned by the state and operated by the Department of Natural Resources (DNR). The defendants, employees of DNR, moved to

dismiss on the ground that the complaint as framed failed to state a cause of action, citing the provisions of sec. 29.68, Stats. 1975.[1] The trial court granted the motion. We agree and affirm.

The principal question on this appeal is: Are the employee defendants named herein "owners" as that term is used in sec. 29.68(5), Stats. 1975?

Other questions raised by the parties will be discussed in the balance of this opinion.

---

[1] "29.68. **Liability of landowners.** (1) SAFE FOR ENTRY; NO WARNING. An owner, lessee, or occupant of premises owes no duty to keep the premises safe for entry or use by others for hunting, fishing, trapping, camping, hiking, snowmobiling, berry picking, water sports, sightseeing or recreational purposes, or to give warning of any unsafe condition or use of or structure or activity on such premises to persons entering for such purpose, except as provided in sub. (3).

"(2) PERMISSION. An owner, lessee or occupant of premises who gives permission to another to hunt, fish, trap, camp, hike, snowmobile, sightsee, berry pick or to proceed with water sports or recreational uses upon such premises does not thereby extend any assurance that the premises are safe for such purpose, or constitute the person to whom permission is granted an invitee to whom a duty of care is owed, or assume responsibility for or incur liability for any injury to person or property caused by any act of persons to whom the permission is granted, except as provided in sub. (3).

"(3) LIABILITY. This section does not limit the liability which would otherwise exist for wilful or malicious failure to guard or to warn against a dangerous condition, use, structure or activity;
. . .

"(4) INJURY TO PERSON OR PROPERTY. Nothing in this section creates a duty of care or ground of liability for injury to person or property.

"(5) DEFINITIONS. In this section:

"(a) 'Premises' includes land, private ways and any buildings, structures and improvements thereon.

"(b) 'Owner' means any private citizen, a municipality as defined under s. 144.01(12), the state, or the U. S. government, and for purposes of liability under s. 270.58, any employe of the foregoing."

On December 14, 1976, the plaintiffs, Donald Wirth, a minor, by his guardian *ad litem,* and his parents, Gordon and Susan Wirth, commenced this action against the defendants, employees of the DNR, for personal injuries sustained by Donald Wirth.

The complaint alleges that on April 29, 1976, Donald Wirth was riding his "trail bike" on a service road which encircles Salmo Pond, an area of land and water, owned by the State of Wisconsin and administered by DNR. The pond is a part of an area known as the Black Earth Creek Fishery Area in Dane county. It is open to the public for fishing and recreational purposes.

He struck a metal cable which had been extended across the road. The road encircling Salmo Pond was used prior to the accident by employees of DNR and the public for various purposes including the operation of automobiles, trucks, and recreational vehicles.

The cable had been placed across the road a short time prior to the accident and was not present on prior occasions when Donald Wirth had ridden his trail bike on the road.

The cable was not marked or barricaded. As a result of the accident, Donald Wirth suffered serious head and facial injuries.

The defendants were all employees or agents of DNR at the time of the accident. Neither the State nor DNR was joined as a defendant. The defendants were sued in their individual capacities. The complaint alleged that the defendants negligently installed a hazardous, non-natural obstruction across the service road without installing or maintaining warning signs, and that this condition constituted a "trap."

The defendants, before answer, moved to dismiss the complaint for failure to state a claim upon which relief could be granted. The motion was granted and the complaint was dismissed with prejudice.

Section 29.68, Stats. 1975, provides a special limitation on the duty of care owed by owners, lessees and occupants of land which is opened for the recreational use of others. The word "owner" is given a special meaning. The plaintiffs argue that the state employees do not come within the statutory definition of owner in sec. 29.68, when sued in their individual capacities. They argue that these employees therefore would be liable for the negligent performance of a purely ministerial duty. *Cords v. Anderson,* 80 Wis.2d 525, 259 N.W.2d 672 (1977).

The plaintiffs contend that the language in sec. 29.68 (5) (b),[2] Stats., including within the statutory definition of owner state employees ". . . for purposes of liability under s. 270.58. . . ." refers only to "the non-substantive issue of liability of the State for satisfying judgments against state employees." Under this view, the reference to sec. 270.58, Stats. (now 895.46)[3] in sec. 29.68, merely

---

[2] The definition of owner in sec. 29.68, Stats., was amended by Laws of 1975, ch. 179 to include the language which is in controversy in this case. The effective date of this amendment was March 25, 1976. *See, Cords v. Anderson,* 82 Wis.2d 321, 262 N.W. 2d 141 (1978) (on rehearing).

[3] Sec. 270.58, Stats. 1973, was renumbered sec. 895.45, by Supreme Court Order of February 17, 1975, effective January 1, 1976. 67 Wis.2d at 761. It was renumbered sec. 895.46, (1) and amended by ch. 81, Laws of 1975, published October 1, 1975 to read as follows:

"**State and political subdivisions thereof to pay judgments taken against officers.** (1) Where the defendant in any action or special proceeding is a public officer or employe and is proceeded against in his official capacity or is proceeded against as an individual because of acts committed while carrying out his duties as an officer or employe and the jury or the court finds that such defendant was acting within the scope of his employment the judgment as to damages and costs entered against the officer or employe in excess of any insurance applicable to such officer or employe shall be paid the state or political subdivision of which he is an officer or employe. Agents of any department of the state

eliminates the requirement that the State of Wisconsin satisfy any judgment obtained against state employees for injuries occurring on state owned land.

Sec. 270.58, Stats., provided that when a public officer or employee was sued in his official capacity for acts occurring within the scope of his employment, any judgment for damages and costs was to be paid by the State or political subdivision of which the defendant was an officer or employee.

In *Cords v. Ehly*, 62 Wis.2d 31, 214 N.W.2d 432 (1974), it was held that sec. 270.58, Stats., was not a sub-

shall be covered by this section while acting within the scope of any written agreement entered into prior to the occurrence of any act which results in any action or special proceeding. Regardless of the results of the litigation the governmental unit, when it does not provide legal counsel to the defendant officer or employe, shall pay reasonable attorney's fees and costs of defending the action, unless it is found by the court or jury that the defendant officer or employe did not act within the scope of his employment. Failure by the officer or employe to give notice to his department head of action or special proceeding commenced against him as soon as reasonably possible shall be a bar to recovery by the officer or employe from the state or political subdivision of reasonable attorney's fees and costs of defending the action. Such attorney's fees and expenses shall not be recoverable if the state or political subdivision offers the officer or employe legal counsel and such offer is refused by the defendant officer or employe. Deputy sheriffs in those counties where they serve not at the will of the sheriff but on civil service basis shall be covered by this subsection, except that the provision relating to payment of the judgment shall be discretionary and not mandatory. In such counties the judgment as to damages and costs may be paid by the county if approved by the county board.

"(2) Any town officer held personally liable for reimbursement of any public funds out in good faith pursuant to the directions of electors at any annual or special town meeting shall be reimbursed by the town for the amount of the judgment for damages and costs entered against him."

The statute was later renumbered by ch. 198, Laws of 1975, and amended by ch. 199, Laws of 1975. A new subsection was added in ch. 29, Laws of 1977.

stantive statute creating a cause of action against employees for any act or failure to act within the scope of their employment.

"Any liability of state employees is governed by the common law as adopted in this state by the supreme court. If the defendants are liable under the applicable doctrines, then sec. 270.58 provides that the state will pay the judgment if the action or inaction giving rise to the liability was done in good faith within the scope of state employment. Sec. 270.58 does not become applicable until after a judgment of liability is entered." *Id.* at 38; *Accord, Chart v. Dvorak,* 57 Wis.2d 92, 203 N.W.2d 673 (1973).

The plaintiffs admit that if the interpretation of these two statutory provisions which they propose is adopted, the state employees will lose all benefit of the protection from monetary loss which sec. 270.58, Stats., seeks to provide. The attorney general argues on behalf of the defendants that it would be absurd to adopt the plaintiffs' proposed construction of the statute because the legislature could not have intended to remove the protection of sec. 270.58, by amending sec. 29.68. This is especially so, it is argued, because the amendment to sec. 29.68, was designed to extend protection rather than withdraw it.

Ambiguity in a statute exists when ". . . a statute is capable of being understood by reasonably well-informed persons in two or more different senses." *Northern States P. Co. v. Hunter Bd. Of Supv.,* 57 Wis.2d 118, 125, 203 N.W.2d 878 (1973) *quoting from Kindy v. Hayes,* 44 Wis.2d 301, 308, 171 N.W.2d 324 (1969) ; *See, also,* Comment, *Statutory Construction-Legislative Intent-Use Of Extrinsic Aids In Wisconsin.* 1964 Wis. L. Rev., 660. Since the reference to sec. 270.58, Stats., in sec. 29.68, is capable of more than one reasonable construction, this

court may resort to extrinsic aids in determining legislative intent.

Sec. 29.68, Stats., was originally adopted in 1963 [ch. 89, Laws of 1963]. It specifically limited the liability of private landowners who opened their lands to the public. In *Goodson v. Racine*, 61 Wis.2d 554, 213 N.W.2d 16 (1973), it was held that the statute as it then existed did not include public owners of land. "The statute must be strictly construed so as to limit its effect to private landowners." *Id.* at 559. *Accord, Cords v. Ehly*, 62 Wis.2d at 35.

In 1975 the legislature changed sec. 29.68, Stats. Assembly Bill 125 was introduced on January 21, 1975, and as originally drafted the bill contained no reference to state employees. "Owner" was defined as "any private citizen, a municipality under sec. 144.01(12), the State or the United States Government." The bill was later amended to include under the definition of owner the language "and for the purposes of liability under sec. 270.58 any employee or agent of the foregoing . . ." Legislative Reference Bureau File on Assembly Bill 125 (1975).

The Fiscal Note accompanying this Bill stated that the amendment proposed to apply the protection afforded by the provisions of sec. 29.68, Stats., to recreational lands owned by the State and local governments. The anticipated effect would be to reduce the potential liability of these governmental units caused by employee negligence.

It seems clear that the legislature did not intend to effect any change in the protective provisions of sec. 270.58, Stats. The intent of the amendment to sec. 29.68, was to provide that in situations where previously a public officer or employee would be held liable for acts occurring within the scope of his employment on public

land and for which the State would have been liable for payment under sec. 270.58, the employee now will be deemed an "owner" for the purpose of sec. 29.68.

To hold otherwise would operate to withdraw the protection of sec. 270.58, Stats., from public employees precisely in the same circumstances that the legislature has created special protection for landowners both public and private. The protection of the public employee, as well as the state itself, is further supported as being consistent with general tort principles. Restatement (Second) of *Torts*, sec. 384 (1965) provides:

"§384. **Liability of persons creating artificial conditions on land on behalf of possessor for physical harm caused while work remains in their charge.** One who on behalf of the possessor of land erects a structure or creates any other condition on the land is subject to the same liability, and enjoys the same freedom from liability, as though he were the possessor of the land, for physical harm caused to others upon and outside of the land by the dangerous character of the structure or other condition while the work is in his charge."

We conclude the employees named as defendants are "owners" as that term is defined in the statute.

The plaintiffs raise other issues which were not submitted to the trial court. It is the often-repeated rule in this State that issues not raised or considered in the trial court will not be considered for the first time on appeal. *Binder v. Madison,* 72 Wis.2d 613, 241 N.W.2d 613 (1976); *Hortonville Ed. Asso. v. Joint Sch. Dist. No. 1,* 66 Wis.2d 469, 479, 225 N.W.2d 658 (1975); *Northern States P. Co. v. Hunter Bd. Of Supv.,* 57 Wis.2d at 132–133; *Holytz v. Milwaukee,* 17 Wis.2d 26, 30, 115 N.W.2d 618 (1962). This rule however is not absolute and exceptions are made. "These exceptions to the general rule, however, involve questions of law which, though

not raised below, may nevertheless be raised and decided by this court on appeal. . . . [W]here the question raised for the first time on appeal involves factual elements not raised by the pleadings or not brought to the attention of the lower court, this court . . . will not generally decide such questions. . . ." *Herro v. Heating & Plumbing F. Corp.*, 206 Wis. 256, 264, 239 N.W.413 (1931). *See also, Cords v. State*, 62 Wis.2d 42, 54, 214 N.W.2d 405 (1974).

The rule is one of administration and does not involve the court's power to address the issues raised. *Northern States P. Co. v. Hunter Bd. of Supv.*, 57 Wis.2d at 133. In this case, all new issues raised are legal questions, the parties have thoroughly briefed the issues and there are no disputed issues of fact. The issues raised are therefore within the bounds of discretion previously exercised by this court. "Because the issue involves a question of law rather than of fact, and has been briefed by both sides, we hold that it is one of sufficient public interest to merit decision." *Binder v. Madison*, 72 Wis.2d at 618.

The complaint specifically alleged that Salmo Pond was a public facility used for "fishing and recreational purposes." The statute expressly provides in part that the limitation of duty conferred extends to premises used by others for fishing or recreational purposes. Premises as defined in sec. 29.68(5)(a), Stats., "includes lands, private ways and any buildings, structures and improvements thereon."

The plaintiffs now argue that the statute should only apply to remote and uncontrolled areas and argues that the Salmo Pond area was not remote or uncontrolled. The allegations of the pleadings fall directly within the language of the statute. Although the limits of the statutory definition of premises are not entirely clear, those limits have not been reached in this case. This court in *Copeland v. Larson*, 46 Wis.2d 337, 174 N.W.2d 745

(1970) extensively discussed the legislative history of this statute. The court noted that although the statute was initially proposed to protect owners of forest land from liability to deer hunters, the legislation was ultimately drafted to apply on a much broader scale. The intent was to encourage the use of forest and farm lands for many outdoor recreational sports by restricting the common-law liability of the landowner to such areas in various respects. 46 Wis.2d at 344. In *Copeland*, the court applied the statute in a situation where a minor dived off a private pier at a resort on a lake and sustained injuries causing quadriplegia. Although the court found valuable consideration, which withdrew the landowner's protection under the statute, it was nowhere questioned that the resort and accompanying pier came within the provisions of the statute.

The New Jersey Supreme Court recently decided *Harrison v. Middlesex Water Co.*, 80 N.J. 391, 403 A.2d 910 (1979). The New Jersey Landowner Liability Act is similar in many respects to sec. 29.68, Stats.

That case involved a suit brought to recover for the drowning death of a man who had tried to rescue two fifteen-year-old boys who had fallen through a thin patch of ice on a reservoir. The New Jersey Landlord Liability Act, N.J.S.A., 2A:42A–2, *et seq.*, was enacted in 1968 and contained no explicit definition of premises. The court held that where the reservoir was located in a densely populated suburban community it would not apply the Act as a bar to recovery. "We continue to adhere to the view that the Act does not grant immunity from liability to the owners or occupiers of land situate, as here, in residential and populated neighborhoods." *Harrison v. Middlesex Water Co.*, 80 N.J. at 397, 403 A.2d at 913.

The New Jersey rule is relatively narrow and even were this court to adopt the rule, it would not apply in this case. According to the complaint, "Salmo Pond is an

area of land and water, . . . is part of what is known as the Black Earth Creek Fishery Area, and is located about one and one-half miles west of Cross Plains in Dane County. . . ." The accident involved in this case did not occur in a densely populated area, but rather in a rural or semi-rural environment. Salmo Pond and the surrounding area clearly falls within the meaning of premises open for recreational use found in sec. 29.68, Stats.

The plaintiffs also argue that the duty from which the "owner" of premises under sec. 29.68, Stats., is relieved, is only the affirmative obligation to inspect or post warning of dangerous conditions. It is asserted that affirmative acts of negligence by individuals were never intended to be covered by the statute whether those acts of negligence were committed by an "owner" or anyone else.

The statute does not contemplate that the land subject to public recreational use shall remain static. Since the purpose of the statute was to open land for recreational use, it would be inconsistent for the statute to provide protection only if the owner or occupant does not perform any potentially negligent activities on the land.

The statute contains an explicit reference to affirmative acts by providing that "owner . . . owes no duty *to keep* the premises safe for entry or use . . . or to give warning of any unsafe *condition* or *use of* or *structure* or *activity* on the premises." Sec. 29.68, Stats. 1975. (Emphasis added.)

The stringing of the cable was a condition or structure on the premises. Under the statute, there was no duty on the part of the state employees to keep the premises safe or to warn of the potential hazard created by the cable.

The complaint did not allege a wilful or malicious failure to warn of the hazard under sec. 29.68(3), Stats.,

and it cannot be concluded that standing alone the act of placing a wire cable across the road was wilful or malicious. *Compare, Krevics v. Ayars,* 141 N.J. Super. 511, 358 A.2d, 844 (1976).

A distinction has also been drawn based on whether the injury was caused by a natural or artificial condition, which is similar to the affirmative act argument presented here. *Diodato v. Camden County Park Comm.,* 162 N.J. Super. 275, 392 A.2d 665 (1978). However, the statute does not draw this distinction. It refers only to conditions. The term is not limited to artificial ones.

The argument is also made that because Donald Wirth was a minor when the accident occurred this court should apply the "attractive nuisance" doctrine and refuse, as a matter of public policy, to apply sec. 29.68, Stats., to minors.

The attractive nuisance doctrine has no applicability to the facts alleged in the complaint in the case at bar. One of the essential elements for establishing an attractive nuisance is that the child of tender years be a trespasser upon the premises. *McWilliams v. Guzinski,* 71 Wis.2d 57, 61, 237 N.W.2d 437 (1976). Salmo Pond is a public facility and therefore Donald Wirth was not a trespasser when injured.

There is no general exception to be found in sec. 29.68, Stats., which would exclude minors from the scope of its application. The statute unequivocally states that "[a]n owner . . . owes no duty to keep the premises safe for entry or use by others. . . ."

Reliance is placed on two New Jersey cases which have interpreted that state's Landowners Liability Act to exclude minors from the applicability of its provisions. *O'Connell v. Forest Hill Field Club,* 119 N.J. Super. 317, 291 A.2d 386 (1972) (three-year old child fell into golf course excavation) ; and *Scheck v. Houdaille Construction Materials, Inc.,* 121 N.J. Super. 335, 297 A.2d 17 (1972) (fourteen-year old child injured). Later New Jersey

decisions have expressly rejected the reasoning and result of the *O'Connell* and *Scheck* cases. *Magro v. City Of Vineland*, 148 N.J. Super. 34, 371 A.2d 815 (1977), expressly disapproved of both *Scheck* and *O'Connell* holding that that state's version of sec. 29.68, Stats., was clear on its face and there was no legislative intent expressed which would exempt minor claimants from the rule. The following passage from that case is of particular relevance:

"A legislative mandate cannot and should not be thwarted by the courts to achieve a result not contemplated or intended by the Legislature. Where that mandate is clearly expressed and there is no warrant for alternative construction, a court may not impose its view as to what the law should be." 148 N.J. Super. at 39.

*Accord, Harrison v. Middlesex Water Co.*, 158 N.J. Super. 368, 386 A.2d 405 (1978), *rev'd on other grounds;* 80 N.J. 391, 403 A.2d 910 (1979).

Public policy considerations are urged as grounds for carving out this exception. The legislature has determined that the public policy as to recreational land is one of nonliability to owners and occupiers in order to encourage the opening of such land to the public. "The determination of broad principles or policies for social conduct is the chief characteristic of the legislative function. When the function is exercised by a legislature, the principles are set forth in statutes." Sands, 1 *Sutherland Statutory Construction*, §1.03 (4th Ed. 1972).

The plaintiffs finally challenge sec. 29.68, Stats., on constitutional grounds alleging that equal protection is denied to employees of private landowners.

In order to be able to raise the constitutional question, however, a party must have standing. A person does not have standing to challenge a statute on constitutional

grounds upon a point not affecting his rights. Nor can one challenge the unequal protection afforded to members of a class unless he is a member of that class. *Scharping v. Johnson*, 32 Wis.2d 383, 395, 145 N.W.2d 691 (1966) ; *Dane County v. McManus*, 55 Wis.2d 413, 426, 198 N.W.2d 667 (1972) ; *Moedern v. McGinnis*, 70 Wis.2d 1056, 1063, 236 N.W.2d 240 (1975).

The plaintiffs are not employees of private landowners, nor are they suing employees of private landowners. The plaintiffs do not have standing to raise the issue.

*By the Court.*—Judgment affirmed.