Carsen HALVERSON, by his guardian ad litem Joseph D. Boles, Kim Halverson and Patricia Halverson, Plaintiffs-Respondents,

BLUE CROSS & BLUE SHIELD OF MINNESOTA, Involuntary-Plaintiff,

v.

A. J. HALVERSON and Rural Mutual Insurance Company, Defendants-Appellants. †

Court of Appeals

*No. 95–0970. Submitted on briefs September 1, 1995.—Decided October 3, 1995.*

(Also reported in 541 N.W.2d 150.)

†Petition to review denied.

On behalf of the defendants-appellants the cause was submitted on the briefs of *Mark J. Gherty* and *Susan Schleif Gherty* of *Gherty and Gherty, S.C.* of Hudson.

On behalf of the plaintiffs-respondents the cause was submitted on the brief of *Catherine R. Quiggle* of *Rodli, Beskar, Boles & Krueger, S.C.* of River Falls.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J.   Rural Mutual Insurance Company and A.J. Halverson appeal an order denying their motion for summary judgment. The respondents allege that A.J.'s negligence proximately caused the injuries that Carsen Halverson sustained while driving a go-cart at A.J.'s farm. Rural contends that they were entitled to summary judgment because A.J. was not negligent as a matter of law. Because we conclude that a jury could find A.J. causally negligent, we affirm the trial court's order.

A.J. is the father of Kim Halverson and the grandfather of Carsen Halverson. A.J. and Kim, Carsen's father, decided to give Carsen a go-cart for his sixth birthday. A.J. placed an advertisement on a local radio show seeking a go-cart for sale. In response to the ad, Wayne Svoboda contacted A.J. and told him that he had a go-cart which he would sell for $100. A.J. told Svoboda that they would take it. A few days later, Kim and Carsen went to Svoboda's residence to inspect the go-cart and Kim paid the $100. The purchase was funded in part by Kim and in part by A.J. At the time they purchased the go-cart, Svoboda cautioned Kim and Carsen that the go-cart was not a toy and to be careful.

Kim transported the go-cart to A.J.'s farm where it was stored and Carsen was to use the machine. The go-cart was gasoline operated and was capable of going twenty-one miles per hour. Carsen was too small to reach the gas or brake pedals without scooting forward

in the seat of the go-cart. Carsen would scoot from side to side to operate the go-cart because the brake and gas pedals were on opposite sides. Before his accident, Carsen drove the go-cart several times at the farm while A.J. was present.

On the day of the accident, Kim brought Carsen to A.J.'s farm to use the go-cart while A.J. was in Washington, D.C. Kim watched Carsen drive the go-cart at the farm, and as they prepared to leave, he instructed Carsen to put the go-cart in the storage shed. Kim waited in his truck while Carsen put the go-cart away. When Carsen did not return, Kim sent his daughter, Breanna, to get Carsen. Kim and Breanna found Carsen in the go-cart pinned underneath a tractor with the motor of the go-cart still running. Carsen suffered severe head injuries from striking his head on the tractor.

Carsen, his parents and his guardian ad litem brought suit against A.J. and Rural, A.J.'s farm owners' insurance company, alleging that A.J.'s negligence proximately caused Carsen's injuries. The trial court denied Rural's motion for summary judgment and we granted leave to file a non-final appeal.

■■

When reviewing the trial court's decision to deny or grant summary judgment, we independently apply the same methodology as the trial court. *Hertelendy v. Agway Ins. Co.*, 177 Wis. 2d 329, 333, 501 N.W.2d 903, 905 (Ct. App. 1993). Summary judgment methodology is well established and it need not be repeated here. *See Grams v. Boss*, 97 Wis. 2d 332, 338, 294 N.W.2d 473, 476 (1980). The question presented under this methodology is whether the facts alleged are sufficient to permit a jury to determine that A. J. was causally negligent for the injuries sustained by Carsen.

■

Rural contends that A.J. is not negligent as a matter of law because A.J. was not on the property on the date of the injury and was unaware of the use of his property on that specific day. We do not agree. The evidence would permit the jury to conclude that A.J. purchased the vehicle with his son and permitted it to be stored and used on his property with knowledge that Carsen was too young and of insufficient height to properly operate the vehicle. The acts of facilitating, encouraging and permitting Carsen to use the dangerous vehicle on his property are a sufficient basis to permit the jury to conclude that A.J. was negligent. A.J. was aware that the machine would be used on his property for this purpose at various times, and there was nothing about the time or the day selected by Kim which could be regarded as an intervening cause. Therefore, the mere fact that A.J. had no knowledge of Kim and Carsen's use of his farm for go-carting on that particular day is no defense to his alleged negligence.

■

Rural also argues that the respondents' claim is based solely on the theory of negligent entrustment under RESTATEMENT (SECOND) OF TORTS § 390 (1965), a section which Rural contends was specifically rejected in *Erickson v. Prudential Property & Cas. Ins. Co.*, 166 Wis. 2d 82, 479 N.W.2d 552 (Ct. App. 1991). First, we do not agree that facilitating and encouraging the use of a dangerous vehicle on his property constitutes only a theory of negligent entrustment. The negligence is not solely the purchase of the go-cart for Carsen, but includes encouraging its use on his property. Each person has a duty "to exercise ordinary care to refrain from any act which will cause foreseeable harm to another [and] to refrain from any act which creates an unrea-

sonable risk to others." *Ollerman v. O'Rourke Co.*, 94 Wis. 2d 17, 46, 288 N.W.2d 95, 109 (1980). A jury could find that A.J., by permitting the go-cart to be stored on his property and encouraging its use on his property, created a foreseeable and unreasonable risk to Carsen. Thus, we conclude that there is a cause of action independent of a theory of negligent entrustment which could result in a determination that A.J. was causally negligent.

Further, we do not agree that the theory of negligent entrustment as reflected in RESTATEMENT (SECOND) OF TORTS § 390 (1965), was rejected in *Erickson*. Section 390 provides:

> **Chattel for Use by Persons Known to be Incompetent**
>
> One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.

In *Erickson*, the decedent was supplied a chain saw that he was using at the time of his death. The plaintiff made a claim against the supplier of the chain saw based on § 390, but the court rejected the claim when the evidence disclosed that the decedent was an experienced chain saw user. *Id.* at 94, 479 N.W.2d at 556. *Erickson* therefore rejected the theory of negligent entrustment not as a proposition of law but because the facts in the case were insufficient to invoke this theory of liability.

However, in this case, A.J. was in part responsible for supplying[1] the motorized go-cart capable of going twenty-one miles per hour to his six-year-old grandson who could not reach the brake or gas pedals without scooting forward in the seat. This is specifically the theory of negligent entrustment reflected in the RESTATEMENT. While the jury may conclude that Carsen's experience with a riding lawn mower, his level of maturation and his physical size were adequate for the operation of the go-cart, this issue presents a question of fact for the jury.

We conclude that the theory of negligent entrustment reflected in § 390 is a valid cause of action in Wisconsin. While no Wisconsin case has specifically adopted this provision, the RESTATEMENT (SECOND) OF TORTS has often been cited and relied upon by the courts of this state. The theory of negligent entrustment comports with the overall theories of negligence and is compatible with the tort law developed by this state. It is also consistent with the public policy of fixing liability upon those who are responsible for injury.

Because the facts of the instant case would permit a jury to find A.J. causally negligent for Carsen's injuries either by direct negligence or negligent entrustment, we conclude that the trial court properly denied Rural's motion for summary judgment. This

---

[1] Section 390 applies to sellers, lessors, donors or lenders, and to all kinds of bailors, whether the bailment is gratuitous or for consideration. RESTATEMENT (SECOND) OF TORTS § 390 cmt. a (1965).

record contains sufficient facts to submit the case to the jury for its determination of A.J.'s negligence.[2]

*By the Court.*—Order affirmed.

---

[2] Rural argues in its reply brief that A.J. may be immune from liability under § 895.52, STATS., because driving a go-cart is a recreational activity. Because Rural failed to raise this issue before the trial court, we will not consider it on appeal. *Wirth v. Ehly*, 93 Wis. 2d 433, 443, 287 N.W.2d 140, 145 (1980).